## Stehman and others *against* Stehman.

A, after devising a tract of land to the children of his son *John* who was dead, and another to his son *Tobias;* devised one hundred acres to his widow for life, and *after* her death "to the male heirs of *Tobias,* if any he gets, in 'fee," and " for want of male heirs of *Tobias,* to go to the male heirs of his son *John* in fee ;" " the said one hundred acres to be parted and valued *after* the death of the widow, by five men;" but if no grandchildren, to go to the devisor's children and be divided among them. At the death of the widow, *Tobias* was single and without children, but afterwards married and had children. Held, that the limitations over after the death of the widow were concurrent contingent remainders, and for want of male heirs of *Tobias* at her death, vested irrevocably in the male heirs of *John.*

A limitation is not to be deemed an executory devise if it may by any practicable construction be sustained as a contingent remainder.

No presumption of an intent to die intestate as to any part of the estate, is to be made, where the words of the testator will carry the whole.

APPEAL from the circuit court of *Lancaster* county, held by Chief Justice *Gibson.*

This was an action of ejectment brought by *Tobias Stehman, Christian Stehman, John Stehman,* and *Jacob Stehman* against *Tobias Stehman,* in which judgment was given for the plaintiffs upon a special verdict.

*Tobias Stehman,* the grandfather of the plaintiffs and father of the defendant, being seised in fee of several tracts or parcels of land, by his will dated the 14th of November 1814, (said will being contained in the memoranda of a scrivener, who was to put the same into form) made, among others, the following devises. " To *Tobias,. Christian, John* and *Jacob,* the children of my son *John Stehman,* (the plaintiffs) my plantation bought of *Daniel Brenneman* containing one hundred and thirty-three acres to hold to them in fee, to be valued and appraised by five men *after* the death, marriage or removal of *John's* widow. To *Tobias Stehman* my son, (the defendant) the mansion house and place adjoining *Bare* and others, containing about two hundred acres more or less in fee. *Tobias* to grant a water right to the mill as far as it runs through his lands and pay certain legacies. To my four daughters, two hundred acres of land to be equally divided among them. The testator next devises the property in dispute as follows. " To my widow Catharine, I give the new stone dwelling house and ten acres of land, and the mill and ninety acres of land along the left side of the road from the mill to the big lane, all the utensils, the mill dam, &c. during her life. The mill, lands and house bequeathed to my widow *after* her death to go to the male heirs of my son *Tobias* in fee, if any he gets, and for want of male heirs it shall go to the males of *John* in fee, and to be valued by five men at a valuation to be fixed either by self hereafter, but if not done to be valued by five men, in parcels, or whole, among them. The

mill, houses, and lands of one hundred acres, are to be parted and valued *after* the death of the widow, by five men, &c. but if no grandchildren, it shall go to all my children and parted and appraised among them." He further devised that *John's* widow should keep possession of the one hundred and thirty-three acres of land bequeathed to her children, until her death, marriage or removal from it, and thereon bring up and maintain them. The special verdict which refers to the foregoing will, and contains the facts already stated, further sets forth, that the said testator, at the making of the said will, had a wife named *Catharine*, *Tobias*, the defendant, his son, and four daughters, *Catharine* married to *Christian Rohrer*, *Elizabeth* married to *Henry Dietrich*, *Margaret* married to *Daniel Dietrich*, and *Feronica Stehman.* That the testator's son *John* was born on the 25th of December 1783, and died on the 25th of September 1813, leaving a widow, who married *Michor Brenneman* in 1816, and four sons the plaintiffs in this cause. That the said *John Stehman* deceased lived upon, worked and enjoyed the tract of land devised by said will to his widow, from his marriage on the        day of 1805, until his death ; and his widow and children lived on and enjoyed it till the making of his father's will.

That the said *John Stehman*, the son, occupied and enjoyed the two hundred acres devised by said will to his sisters, from his marriage in 1805 until his death. That the widow of the testator died the 4th of January 1815, when *Tobias* the son was single and had never been married.

That *Tobias* the son intermarried with his present wife the 15th of June 1815, by whom he has three sons and one daughter, namely *Tobias*, born the 4th of July 1817 ; *Henry*, born the 10th of May 1822 ; *Jacob*, born the 18th of August 1825 ; and *Martha*, born the 26th of June 1819.

That *Tobias Stehman*, the son, was born the 24th of October 1785, and lived with his father until his father's death ; and was a dutiful, active and industrious son, aiding and assisting his father in carrying on his farms and in building the mansion house, mill and dam erected on the lands in dispute, which buildings were begun in the year 1808, and completed in 1809 or 1810. That *John*, the son, when they were pressed in the hauling for the building, helped as other neighbours with his team a few days.

If the court should be of opinion that, on the true construction of the said will, connected with the facts and circumstances above found, the plaintiffs are by law entitled to recover the mansion house, mill and lands for which this ejectment is brought, then judgment to be entered for the plaintiffs with six cents damages and six cents costs ; but if the court should be of opinion that, upon a true construction of the said will, connected with the above facts and circumstances, the plaintiffs are not entitled to recover, then judgment for the defendant with six cents costs.

[Stehman and others v. Stehman.]

*Frazer*, for plaintiff in error, contended, that as *John* was dead before the testator made his will, a fair construction of the instrument would give the lands devised to the male heir *Tobias*, the limitation being " to the male heirs of *Tobias* in fee, if any he gets." The circumstances of the family and the equality among the grandchildren thus produced, tend to fortify this construction. In 1805 when *John* was married, the testator owned six hundred and thirty-three acres of land, from which time for eight years and a half *John* was in possession of the two hundred acres devised by the will to his sisters, and for nine years and two months he and his family occupied an additional tract of one hundred and thirty-three acres. These were advantages that *John* and his children enjoyed over the other devisees when the will was made. *Tobias*, who was of age in 1806, worked for his father both before and after that period, till the death of the latter, without compensation. The rents, issues and profits of the three hundred and thirty-three acres received by *John* for eight or nine years, and the loss of *Tobias* in working for his father after 1806, were the causes of the testator's devising two hundred acres to him. This devise to *Tobias* should, therefore, be thrown out of view, and it should be considered that *John's* children have received one hundred and thirty-three acres of land under the will, whilst the children of *Tobias* will receive but one hundred by the construction we contend for. Mr *Frazer* here went into a calculation to show that the proceeds of the land received by *John*, with the devise to his children, placed him and them in a better situation than *Tobias* and his children. He further contended, that the testator never contemplated limiting the time of *Tobias's* having children to the death of the widow, who was a very old woman, and lived but six weeks after her husband ; more especially, as *Tobias* was unmarried when the will was made. The language of the will is, *after* her death ; it is not said if *Tobias* have no male heirs *at* her death, or *when* she dies. It was a life estate to the widow, with an executory devise over upon a condition, which might be performed at any time during the life of *Tobias ;* and until his death, or the birth of a male heir, the fee was in abeyance. A limitation over after a freehold estate that is not concurrent with the freehold estate, such limitation will take effect as an executory devise, if it be within a time that does not produce a perpetuity ; 2 *Fearne on Dev.* (by *Powell*) 21. Here a freehold estate has been created, but the limitation over is to go upon the contingency of having male heirs ; the fee, therefore, would rest in the heirs at law until the happening of the contingency—the birth of children of *Tobias*. The first taker has only the use of the estate, pending the contingency mentioned, which must happen within the time limited. 4 *Kent's Com.* 264, 265. When no person *in esse* in whom the fee can vest, it is in abeyance. 2 *Tucker's Black.* 107. Where a future estate is devised upon a contingency, until that contingency happen, the fee simple descends to the heir at law. *Ibid.*

173.　As to the construction of the will, he cited, 3 *Com. Dig.* 448, *N.* 16, *tit. Devise* ; 7 *Bac. Ab.* 341, *F. tit. Will.*

*Rogers,* for defendant in error.

A remainder is a remnant of an estate in lands or tenements, expectant in a particular estate, and created at the same time with it. Remainders are vested or contingent. *Fearne* says, there are four kinds of *contingent* remainders. *Fearne* 3, 4, 5, 6, 7. More properly reducible to two kinds—to an *uncertain person,* and upon an *uncertain event :* they are so treated by *Blackstone,* and adopted by Chancellor *Kent.* 4 *Kent's Com.* The definition of an *executory devise* by *Blackstone* is incorrect, it is that of a contingent remainder. See *Fearne's* definition. 2 *Fearne* 1, 2, 3, (298), (299). It follows, if the same estate that is created by devise could be created by deed or common law conveyance, it is not an executory devise, but a contingent remainder. The great difference between the two is, that a contingent remainder can be barred by a fine levied, or common recovery suffered by the tenant for life. An estate limited on any event cannot take effect as an executory devise when there is a particular estate of freehold capable of supporting it ; it is a contingent remainder. 2 *Fearne* 3, (299), *et seq.* And again, in same book 496 (418), whenever a contingent limitation is preceded by a *freehold* capable of supporting it, it is construed a contingent remainder, and not an executory devise. In *Purefoy* v. *Rogers,* Lord *Hale* says, where a contingency is limited to depend upon an estate of freehold which is capable of supporting a remainder, it shall never be construed to be an executory devise, but a contingent remainder. 2 *Saunders* 381 to 388, *note* 9. The same principle is recognized in *Doe* v. *Morgan,* 3 *Term Rep.* 765 ; *Goodtitle* v. *Billington,* 2 *Doug.* 758 ; and by Chief Justice *Tilghman* in *Dunwoodie* v. *Reed,* 3 *Serg. & Rawle* 441. It follows, that where a life estate is created in one person, and a limitation over, or a contingency to another, the contingent limitation is not an executory devise, but a contingent remainder ; and the rule holds good in *all cases* when the estate for life goes into operation. Events that take place *previous* to the death of the testator (as the death of the tenant of the particular estate) may alter a contingent remainder into an executory devise. This is from the necessity of the case, otherwise the devise would fail altogether ; *ut res magis valeat quam pereat.* 2 *Fearne* 494, 495, 496, (418), (419). But events happening *subsequent* to the death of the devisor cannot have this effect, and therefore held, that " where a freehold has once *vested,* it seems no subsequent accident will make a contingent remainder enure as an executory devise." 2 *Fearne* 498, (420), (421) ; 1 *Roberts on Wills* 478, and cases there referred to ; *Doe* v. *Morgan,* 3 *Term Rep.* 766 ; *Carlyle* v. *Carman,* 3 *Rawle* 491. In this case, had the widow died before the testator, the contingent remainder would have been changed into an executory devise, and then *Tobias's* sons would have taken the estate ; but the freehold *vested* in the widow, and the limitation over was a contingent

[Stehman and others v. Stehman.]

remainder. On the death of the widow, 4th January 1815, *Tobias* had no male heirs, and as the remainder could not vest it was gone, and the devise over to *John's* sons took effect. When was the fee simple to pass? *At the death of the widow.* This appears fully from the will. Clearly the testator contemplated a state of the parties at the death of the widow, not at *Tobias's* death. The estate was ordered to be parted and divided at the death of the widow, among the grandchildren, if they were alive at the time ; if dead, then among the heirs at law. Yet, according to the argument urged, if there had been no grandchildren at the widow's death, the estate could not be parted among the heirs at law, but must remain in abeyance, until after possibility of issue extinct of *Tobias*. The fee was intended at the death of the widow to vest in some one, in *Tobias's* sons if he had any, if not, in *John's* sons. These limitations then are contingent remainders in fee, depending on an uncertain event. The words used, " heirs male," *are words of purchase*, descriptive of the parties to take. No estate was created in *Tobias* ; of course the sons would take nothing by descent. The rule in *Shelly's* case is, therefore, inapplicable. See *Archer's Case*, 2 *Coke's Rep.* 66 ; 1 *Rob. on Wills* 466, note. It is a *special description* of the devisees, and comes within *Dunwoodie* v. *Reed*, 3 *Serg. & Rawle* 451. It is contended that there is an estate tail male in *Tobias* by implication. Estates by implication arise in two ways. 1. By express words when there is a devise to the party : as an estate to A and his heirs, but if he die without issue of his body then to B, is an estate tail by *implication* in A. 2. By force of implication without express words of devise to the party himself, upon the principle of giving effect to the *intention* of the testator. Here no necessity for implication, because *John's* sons could have taken at the death of the widow, and no implication can arise in violation of the testator's intention. The devises over were contingencies with a double aspect. The case of *Loddington* v. *Keim*, 1 *Salk.* 224 ; *Ld. Raym.* 203. They are contemporary remainders, not expectant one after another ; the limitations depend upon the event of the birth of a son by *Tobias* during the life of the widow. They are not dependent contingent remainders and to take effect in *succession*, but merely the substitution of one contingent remainder for another. 18 *Vin. Ab.* 402, *title Remainder*. 2 *Doug.* 505, note ; 4 *Kent* 200, 201 ; 2 *Doug.* 758 ; 1 *Doug.* 264 ; *Goodwright* v. *Dunbar*, 2 *Black. Rep.* 777 ; *Doe* v. *Holme*, 3 *Serg. & Rawle* 451, 452. The distinction between a fee to succeed a fee and a collateral fee is, whether the first estate vests or not. If it does, the second estate is *void*, because there can be no limitation after a prior vested fee simple ; but if the first estate never vests, and it cannot take effect at the time when it ought to vest by the happening of the contingency, the second estate takes its place and vests when the first limitation should have vested. 4 *Kent's Com.* 200, 201 ; 3 *Serg. & Rawle* 441. The estate in fee, therefore, becoming

vested in *John's* sons, all other limitations were void. 2 *Fearne* 420 to 440.

*Jenkins,* on same side.

It is better that the law should be fixed and certain, than that it should be made to bend to cases of supposed hardship. This is a plain case of two concurrent contingent remainders in fee, and is more so than the case of *Dunwoodie* v. *Reed,* where the court decided the remainders to be contingent and good. The male heirs of *Tobias* take by purchase and not by descent—they are described ; besides which the testator recognized *Tobias* as living, which in the case just referred to was held to make a distinction. It is evident the testator did not intend *Tobias* to take any estate. Whenever a devise is made to the "male heirs" of a person who is living, such words are words of description, and the male heirs take by purchase and not by descent ; 4 *Kent's Com.* 220. No estate by implication can arise, for there is a freehold to support the remainder. *Tobias* was amply provided for by the devisor in his will, who, as if to make it clear that *Tobias* should have no estate in the land in dispute, required him to convey a water right to the mill which forms a part of the property covered by the devise to widow and his "heirs male" or for want of them *John's.* It is an axiom that where there is a particular estate the limitation over is never an executory devise, but a contingent remainder ; 1 *Fearne* 401, 550, 554 ; with this single exception, where the devisee of the particular estate dies in the lifetime of the testator. Were the intention of the devisor in conflict with this rule it could not prevail, but it is manifestly in accordance with it ; 2 *Saunders* 388, A, G ; 2 *Fearne* 10 (495) ; 3 *Rawle.* Here the particular estate had vested in the widow ; the limitations over were consequently contingent remainders, and must vest at the determination of the particular estate or never vest at all. *Tobias* having no "male heirs" at the widow's death the remainder as to them was gone. A remainder to B's eldest son then unborn, after the determination of A's life estate, is absolutely gone if A die before B has a son ; 2 *Bl. Com.* 169. So strict is this rule, that if the child were *in ventre sa mere,* and born after the determination of the particular estate, the remainder could not vest. *Tobias* having no male heirs, the remainder vested in the sons of *John.* Two or more concurrent remainders in fee simple may be limited over, though one only can take effect, so that when the male heirs of *Tobias* have failed, those of *John* are substituted ; 2 *W. Black. Rep.* 777 ; *Douglass* 753 ; *Dunwoodie* v. *Reed,* 3 *Serg. & Rawle* 438. The difficulty in this last case was, whether the first remainder was vested or contingent ; here there is no doubt it is contingent. It is apparent then that the limitation over to *Tobias's* children is a contingent remainder and not an executory devise, and that it fell through for want of male heirs at the death of the widow, upon the plain rule that a remainder must vest at the determination of the

particular estate or *eo instanti* it determines. The remainder to *John's* children is also contingent, and rested on the chance of a failure of "male heirs" of *Tobias*. If there were none at the death of the widow, then this second was substituted for the first remainder, as effectually as if the testator had said in so many words there should be a substitution. The estate therefore goes to *John's* children, and that too in accordance with the intention of the testator, which was that the grandchildren living at the widow's death should take; but if there were no grandchildren living at that time then it was to go to the testator's own children.

*Hopkins*, in reply.

Every will is to be construed according to the intentions of the testator, and if that be apparent, courts will carry it into effect, if not contrary to the rules of law. It is certain a preference is given by the will to the male heirs of *Tobias* over the male heirs of *John*; these latter could not take until *Tobias's* heirs were extinct, and then, and not till then, was the estate to go over. We say not till then, for it is manifest that the limitation to the "male heirs of *Tobias, if any he gets*," is not confined in point of time to the death of the widow, but is coextensive with the life of *Tobias*, and a son born ten years after is as fair a subject of the testator's bounty as one born before the widow's death. The devisor could not have intended to limit the time to the life of his widow who was an old woman. The condition attached required time for its performance; and the life of the son, not the death of the widow was its limit. To say that *Tobias's* children shall not take, would be contrary to the intention expressed. If *Tobias* had had sons before and after the death of the widow, all would have come in equally, although the estate in the first instance vested in those living at the widow's death. The whole issue male of *Tobias* is meant, and the devise would be open to let in each subsequent son born after the remainder vested. After the death of the widow, and until *Tobias* had male issue, there would be an intestacy; after their birth they would take the estate as the chief objects of the testator's bounty. This may be done by an executory devise if within a time to avoid a perpetuity. *Fearne* 21. The limitation, "after the death of the widow, to the male issue of *Tobias*, if any he gets," is an executory devise. The ulterior limitation has no connexion with the point of time when the particular estate determines, which is manifest from the condition, that *John's* children are not to take but for *want* of *male heirs* of *Tobias*. It amounts to this; an estate to the widow for life, and if, after her death, *Tobias* should have any children, the estate in fee simple to go to them, but in default of male issue on his part, *then* to *John's* children. The limitation to the children of *John* is void, being an attempt to limit a fee, upon a fee which cannot be done. No remainder can be limited after a grant in fee simple. 2 *Black. Com.* 164; *Fearne* 8; *Coke Lit.* 18 *a*. A contingent fee absorbs the estate as much as a vested

[Stehman and others v. Stehman.]

fee, because it runs to perpetuity. *Coke Lit.* 18 *a.* The words of the will are not *at* the death, but *after* the death of the widow; it directs the parting of the mill, houses, &c. *after* that event. To carry into effect the general intention of the testator, this may be construed to be an estate in tail male to *Tobias.* He was the stock from whom the whole would pass; it is to go to all his heirs' male; and he may fairly be said to have an estate tail by implication. The expression "male heirs" brings them within the letter of the statute *de donis,* and they fall under the rule in *Shelly's* case; they are heirs and not purchasers. In *Robinson* v. *Robinson,* 1 *Burrowes* 38, to effectuate the general intention of the testator, an estate tail was implied against the express words of the will. Here an implication may be made without interference with express words, *Tobias* being the stock from whom the male heirs are to issue. *Pebis* v. *Mitford,* 1 *Ventris* 372, is the case of an estate by implication. It is done to save the estate and carry into effect the intention of the party, and courts are *astute* for these purposes. *King* v. *Milling,* 1 *Ventris* 225. The last son of *Tobias* being as much an object of the testator's bounty as the first, the remainder by implication vests in *Tobias.* 2 *Levinz* 58; *Lessee of Haines* v. *Witmer,* 2 *Yeates* 401. In *Walters* v. *Drew,* a son by a mere recital was permitted to take by implication, and so prevent the estate from going over. A devise was, "if A die without issue the estate to go to B," and A took an estate by implication. *Cases temp. Hardwicke* 258; *Fearne* 300. By giving an estate tail to *Tobias,* the intention of the testator is preserved, and the estate is kept in the line of *Tobias* in preference to that of *John.*

The opinion of the Court was delivered by

GIBSON, C. J.—This is a question depending on intention rather than on any controverted rule of law, and one without any apparent difficulty. The plaintiffs insist that these limitations present a case of concurrent remainders dependent on a contingency with a double aspect: while the defendant insists that the general and paramount intent was to secure the estate to the children of *Tobias* at all events, and without regard to the time of their birth; that to effectuate this intent, it is necessary either to imply the existence of an estate in tail male in *Tobias* himself, or to sustain the limitation to his children as an executory devise, supposing the estate to have descended at the death of the widow to the testator's right heirs, in order to await the expected contingency which was to happen, if at all, within the lifetime of *Tobias* and the usual period of gestation afterwards.

Granting that subordinate objects must yield to the general intent, and that to effect it an estate may be enlarged, restricted or implied, yet it is evident that to strain the limitation to the children of *Tobias* so as to give their father an estate tail, would dislocate every joint and articulation of what seems to have been the general and para-

3 K

[Stehman and others v. Stehman.]

mount design.  An adequate provision had been made for *Tobias*, it
is to be presumed, in the devise to him of the mansion-house and
farm though burthened with a pecuniary charge; and the object to
be accomplished by the limitation in question, was evidently to se-
cure the land in contest to his children or the children of *John*, with-
out subjecting it to his debts, or exposing it to the accidents that
might befall it as his property.  That the precaution taken to effect
this might have been eluded, had there been an estate tail in him,
by turning it into a fee, is too obvious to need remark.  Without
having children of his own, he could by the same means have dis-
appointed another principal object of the testator in the further limi-
tation to the children of *John*, who were intended to take certainly in
any other event than the existence of children born to *Tobias* him-
self.  The object was not so much to vest the estate in these children
at all events, as to protect it from the acts or disposition of their father.
What if *Tobias* had suffered a common recovery, and the present
were a contest between the plaintiffs and a purchaser under a judg-
ment against him, or, to make the case more glaring, between such
a purchaser and his own children?  The construction contended for,
fatal as it must have proved to the testator's whole plan, would have
been thought a monstrous one.  But his children were directed in
express terms to take a fee; which would have been inconsistent
with the derivation of an estate tail from him.  To imply an estate
in him, then, that would be subversive of the leading objects of the
will, could be justified on no principle of construction.  So that the
question is whether the limitation to his children can be supported
as an executory devise; and the decision of it must be governed by
the testator's intent in respect to the time of its vesting.

If it be found that the estate was to go over at the death of the
widow, to whom an estate of freehold was given, we shall have one
of the plainest cases in the world, of concurrent remainders limited
to take effect on the happening of a contingency with a double as-
pect—much more so than that presented by the limitations in *Dun-
woodie* v. *Reed*.  The devise over is so expressed in this will as to
indicate what has been supposed an apparent intent that it should
take effect *after* and not *at* the death of the widow—a difference of
little account in common parlance, and absolutely worthless in the
expression of an intention accidentally suffered to rest in the loose
memoranda of a scrivener, intended at the time to be but the material
of a more precise and formal declaration of the testator's will.  Were
it important to ascertain the exact sense in which this word "after"
was used by the scrivener, it might be done by adverting to the
clause in which the testator directs the other land devised to the
children of *John* to be valued "after" the death of their mother, to
whom it was given for their support during her life by way of excep-
tion out of the fee; and there it was used incontrovertibly to denote
the very point of time when her interest should cease.  It is suppos-
ed, however, that as the testator's widow followed him in little more

[Stehman and others v. Stehman.]

than a month from the date of the will, he could scarce have supposed it probable that *Tobias* would marry and procreate within the apparently short compass of her life ; and that he never could have meditated a disposition which, according to the plaintiffs' interpretation of it, would, on any calculation of the chances, almost certainly prove abortive. We are left without information, by the verdict, of the widow's constitution and age ; but the testator has nowhere intimated that the probable duration of her life was, in his opinion, such as to preclude a reasonable expectation of children from *Tobias* before its termination. The estate was to be taken by the children at a valuation of it to be made by the testator, or men appointed by him ; and if the latter, he could not have supposed it probable that all the men would survive *Tobias*, without which the purpose to be effected by their appointment would have been frustrated. If it be said that he contemplated a valuation to be made presently, the remark is open to this objection that, familiar as he must have been with the changes in the price of land that are perpetually taking place, he would scarce have expected it to be a just or reasonable one at the period of his son's death. It would, therefore, seem fair to conclude, that the making of this valuation, and the consequent vesting of the successful limitation over, were coupled in his mind with the death of the widow. But the consequence of postponing them till the possibility of children by *Tobias* should have become extinct, would be inconsistent with any reasonable presumption of intent in another view. No presumption of an intent to die intestate as to any part of the estate, is to be made, where the words of the testator will carry the whole ; and certainly no such intent is apparent here. Yet, according to the hypothesis of the defendant, the estate descended to the testator's right heirs at the death of the widow, and was partable during the interval between that event and the happening of the contingency, as in the case of a common intestacy, by the orphan's court. Can it be supposed that such a partition was thought of ? Had a temporary descent been contemplated, a temporary valuation would doubtless have been directed, and to be made by the men who, according to the defendant's construction, were to appraise the portions of the children at the death of *Tobias* or the sooner happening of the contingency. But putting all this aside, the inflexible rule which demands that no limitation be deemed an executory devise if it may by any practicable construction be sustained as a contingent remainder, overbears all implications of an intention inconsistent with it, and is decisive of the question. This, too, for the all-sufficient reason that these executory devises, being inconsistent with the policy of the common law, which, on account of its abhorrence of estates commencing *in futuro*, requires all the precedent parts of the fee to pass out of the grantor at the same instant, are barely tolerated, and only in favour of the explicit declaration of one who may have been compelled to dispose of his estate when unassisted by counsel. They are therefore to be sustained but in clear cases of

[Stehman and others v. Stehman.]

absolute necessity; and nothing remains but to inquire whether the present is such. In the first place, then, there was a sufficient particular estate of freehold in the widow; next there were limitations after her death, to the male heirs of *Tobias*, if he should have any, in fee; or in default of such heirs, to the males of John; and finally these limitations were concurrent and in defeasance of each other. What more was necessary to give effect to all the practicable parts of the testator's plan? As contingent limitations of a remainder, they would have been effectual to preserve the estate for *all* the children of *Tobias*, had *any* been born in time to take; for their remainder having vested in some of them, would undoubtedly have opened to let in the rest though subsequently born. But in the succession of the events that have taken place, the limitation to them having been passed by, is gone for ever; and the estate is irrevocably vested in those who answered the description in the posterior limitations at the death of the particular tenant.

　　Judgment affirmed.