John Terry & wife *vs.* Elihu Briggs.

*A* testator, after giving to his wife the profit and benefit of all his estate, until his daughter D. should arrive at the age of fifteen years, and the profit and benefit of one half of his estate, for life, after said daughter should arrive at that age, made the following devise: "From the time that my daughter D. arrives at the age of fifteen years, I give and devise one half of my real estate unto my son David, his heirs and assigns forever; and if, after she arrives at the age of fifteen years, as aforesaid, my wife doth marry again, then I give and devise to my son David the whole of my real estate, to hold to him, his heirs and assigns forever." After giving pecuniary legacies to his daughters, which he directed his son David to pay in one and two years after he should come into possession of the real estate before devised to him, the testator added the following clause: "It is my desire that the real estate, from the time of my decease, shall be under the management and control of my son David, he being accountable to his mother for the avails

profits, and benefits thereof, agreeably to the disposition of the land hereinbefore expressed. And if he should die without lawful issue, then all that I have given and devised unto him, I give and devise unto his three sisters, their heirs and assigns forever, subject to the limitations, benefits and uses hereinbefore made to the mother." The testator's daughter D. arrived at the age of fifteen years, and his wife afterwards died without having married again. *Held,* that David took an estate tail in one half of the testator's real estate. *Held also,* that the testator's heirs were entitled to the other half, by descent, on the death of his wife; the limitation over to his three daughters, on the contingency of David's dying without lawful heirs, being void.

A deed, made by a tenant in tail, for the purpose of barring the entail, although it is not recorded until after his death, operates, after it is recorded, from the time of delivery, like any other conveyance.

WRIT OF ENTRY, to recover one undivided third part of a messuage and sixty acres of land in Dartmouth. Trial before *Hubbard,* J. who made the following report thereof:

It was proved or admitted, that William Smith formerly owned the demanded premises, that he resided at Newport (R. I.) at the time of his death, which was on the 28th of May 1807; and that his will, dated October 9th 1801, was duly proved, at said Newport, on the 3d of August 1807. The following items in the will relate to the land now demanded: " *Item.* To my beloved wife, Hannah Smith, I give and bequeath all the profit and benefit of my whole estate, real and personal, until my youngest child, Demarus Smith, doth arrive at the age of fifteen years, provided she remain my widow until that time; but if she marries again, though it be before my daughter Demarus arrives at the age of fifteen years, then the same to cease and determine, and the whole to be distributed among my children, in such manner and proportions as is hereinafter directed. *Item.* After my daughter, Demarus Smith, arrives at the age of fifteen years, then I give and bequeath unto my wife, and my will and desire is, that she should have the use and profit of the one half of my whole estate, for the term of her natural life; except such parts of it as are otherwise specially disposed of. *Item.* From the time that my daughter Demarus arrives at the age of fifteen years, I give and devise one half of my real estate unto my son David Smith, his heirs and assigns forever; and if, after she arrives at the age

of fifteen years, as aforesaid, my wife, that now is, doth marry again, then I give and devise unto my son David the whole of my real estate, to hold to him, his heirs and assigns forever ; said estate consisting of a farm which was given me by my father, situate in Dartmouth, in the State of Massachusetts. *Item.* I give and bequeath unto my daughter Mary Cranston six dollars, and unto my daughters Sarah Smith, Hannah Smith, and Demarus Smith, each the sum of eighty dollars. Said legacies to be discharged by my son David, in their respective proportions, one half in one year from the time at which he comes into possession of the estate hereinbefore devised unto him, and the other half in two years from the time of his first possessing the same. And whereas it often happens that the improvement of lands, by reason of the difficulty of obtaining good tenants, is a source of perplexity, and material injury arises to the freehold from carelessness, waste and stripment, to the detriment of the heirs, it is therefore my desire, that the real estate mentioned, being a farm in the town of Dartmouth, from the time of my decease shall be under the management and control of my son David Smith, he being accountable to his mother, Hannah Smith, for the avails, profits and benefits thereof, agreeably to the disposition of the land hereinbefore expressed. And if he should die without lawful heirs, then all that I have given and devised unto him I give and devise unto his three younger sisters, Demarus, Hannah and Sarah, their heirs and assigns forever, subject to the limitations, benefits and uses hereinbefore made to the mother."

Elizabeth Russell, a witness called by the demandants, testified that she was a daughter of said William Smith, and was brought up on the Smith farm in Dartmouth, with her grandfather, and lived there about twenty five years, and in sight of it since ; that her father did not live on said farm, after he was married, but came into possession of one half of it, after the death of his father in 1800, and used to let out his half of it while he lived; that his widow, after his death, let it out, till Bradford Howland took possession of it in 1826

or 1827 ; that said widow died in 1842 or 1843, not having married again, and that David Smith died in Charleston (S. C.) on the 25th of February 1826, never having been married.

It was in evidence that the female demandant, before her marriage, was Sarah Smith, daughter of said William Smith, and that Hannah Smith, another of his daughters, was still alive.

The demandants claimed title in right of said Sarah, as devisee under her father's said will, on the ground that David Smith died unmarried and without heirs of his body. The tenant claimed title under a deed to him from Bradford Howland and Daniel Howland, jr., of the whole premises demanded, bearing date June 2d 1831, and recorded March 11th 1833. Said Howlands claimed title under a deed of Hannah Smith, the widow of said William Smith, and his daughters Hannah and Demarus, bearing date September 6th 1827, and recorded on the 14th of the same September. This deed conveyed all and each of the grantors' right, title and interest in the demanded premises, which were therein described as "being the same estate that descended to us, the grantors, as heirs at law or legal representatives of William Smith." The said Bradford Howland also claimed title under a deed of David Smith, bearing date in the year 1826, without date of month, acknowledged February 1st 1826, and recorded August 15th 1827, conveying to said Bradford the whole of said demanded premises, for the alleged consideration of $500. This deed recites, that the farm was devised to said David by the will of his father, William Smith, dated and proved as before mentioned.

After the foregoing evidence was introduced, the cause was withdrawn from the jury by consent of parties, that the full court might render such judgment as the law requires.

*Coffin,* for the demandants. David Smith took an estate tail in one half of the testator's real estate. *Brice* v. *Smith,* Willes, 1. *Hulburt* v. *Emerson,* 16 Mass. 244. *Denn* v

*Slater*, 5 T. R. 335.  *Law* v. *Davis*, 2 Stra. 849.  2 Jarman on Wills, 238.  As David's mother did not marry again, nor die before Demarus arrived at the age of fifteen years, she was seized of a life estate in the other half of the testator's estate.  David's deed to Bradford Howland did not bar the entail, by virtue of *St.* 1791, c. 60, § 1.  It does not appear that he was "seized and possessed" of the premises.  A devisee is not seized before entry ; ( *Wells* v. *Prince*, 4 Mass. 64 ;) and it does not appear that he ever entered upon the farm.  Besides, the deed should have been recorded before his death, in order to bar the entail.

A conveyance of sixty acres for $500 cannot be regarded as *bona fide*, within the *St.* of 1791, c. 60.

*Eliot*, for the tenant.  If the half of the testator's real estate, which was not devised to David, was intestate property, then the demandants have a claim to one sixth of that half.  But the testator meant that David should have the whole farm ; and he took one half in fee simple or fee tail.  The contingency of his dying without lawful heirs was too remote.  4 Kent Com. (3d ed.) 273 – 276.  *Waring* v. *Jackson*, 1 Pet. 570.  If so, the limitation was void, and he took an estate in fee simple.  But if he took an estate tail, the entail is barred by his deed to Bradford Howland.  The evidence shows that he let the farm, after his father's death ; and therefore there was entry either by him or for his use, which gave him the requisite seizin to bar the entail by deed.  A deed for this purpose, like any other deed, operates by relation, after it is recorded, from the delivery.  And there is no reason for denying that David's deed was *bona fide.*  *Nightingale* v. *Burrell*, 15 Pick. 120, 121.

See also *Stehman* v. *Stehman*, 1 Watts, 466.  *Hawley* v. *Inhabitants of Northampton*, 8 Mass. 3.

WILDE, J.  The first question to be decided in this case is, what estate David Smith, from whom the tenant derives his title, took in the demanded premises by the last will and testament of his father, William Smith.  The words of the devise are, "I give and devise one half of my real estate unto

my son David Smith, his heirs and assigns forever. And if he shall die without lawful heirs, then all that I have given and devised unto him, I give and devise unto his three younger sisters, Demarus, Hannah, and Sarah, their heirs and assigns forever, subject to the limitations, benefits and uses hereinbefore made to the mother." Upon a certain contingency, which has not happened, the whole real estate was devised to the said David ; but this and other parts of the will are not material in the question to be decided. Nor is it material, that all the words of the will, as above cited, are not in immediate connexion.

The three sisters, on the death of David Smith without issue, did not take an estate in fee by way of executory devise. For we think it very clear, that an executory devise limited to take effect after a dying without heirs, or without issue, is void, as it is not to take effect until after an indefinite failure of issue, which is too remote. A devise in fee, with remainder upon an indefinite failure of issue, is an estate tail ; and where a devise over can take effect as a remainder, it shall be so construed, and not as an executory devise. Such devises are against the policy of the law, which abhors perpetuities. Common recoveries were introduced to bar estates tail, to prevent perpetuities, and to remove the restraint upon the power of alienation. And our statute, by which estates tail may be barred in a more easy and simple form, is founded on the same policy. We adhere, therefore, to the rule which has been frequently laid down, that where a contingency is limited to depend on an estate of freehold, which is capable of supporting a remainder, it shall never be construed to be an executory devise, but a contingent remainder. 4 Kent Com. (3d ed.) 263. *Doe* v. *Morgan*, 3 T. R. 763. *Nightingale* v. *Burrell*, 15 Pick. 110. *Stehman* v. *Stehman*, 1 Watts, 466. If, then, David Smith took an estate tail, by the devise to him, the devise over was a remainder, and not an executory devise ; and we have no doubt that he took such an estate. By the first clause of the devise, he would take an estate in fee simple ; but by the subsequent clause, it

was reduced to an estate tail, by necessary implication. The words 'dying without lawful heirs,' have the same meaning as the words 'dying without lawful issue.' This appears clearly by the devise over to the sisters, who would be the lawful heirs of David, if he left no issue. The charge upon David, to pay certain legacies to his sisters, does not affect the construction of the will, so as to convert an estate tail into an estate in fee simple. *Denn* v. *Slater*, 5 T. R. 335.

The remaining question is, whether the remainder over to the three sisters of David Smith was barred by his deed to Bradford Howland; and we are of opinion that it was. At the time the deed was made, the grantor was of full age ; for he was living in 1801, when the will bears date, and the deed is dated in 1826 ; and he was seized and possessed of an undivided moiety of his father's real estate, as tenant in tail. And there is no evidence to show that his deed to Howland was not made, *bona fide,* for a good and valuable consideration.

It has been argued that the conveyance was not *bona fide,* because only $500 were paid for sixty acres of land. But we have no evidence of the value of the land, and are not authorized, from that fact, to infer that the conveyance was not *bona fide.*

It has been argued also, that the deed should have been recorded before the death of the grantor. But there is manifestly no ground for this objection. The record had relation back, as that of any other conveyance. See *Foster* v. *Stone,* 20 Pick. 542.

The conclusion is, that the demandants have no valid title under the will of William Smith. But they are entitled in right of the female demandant, as she is one of William's heirs, to her share of a moiety of the demanded premises, which were not devised over after the death of his widow ; and judgment is to be entered accordingly.