CHRISTIANE C. TAUBENHAN ET AL.

v.

MARGARET DUNZ.

</div>

1. WILLS—BEQUEST—WORDS OF COMPREHENSIVE IMPORT.—Words of comprehensive import in a bequest, should receive their full extent of operation, unless some very distinct ground can be derived from the context for regarding them as employed in a special and restricted sense.

2. PRESUMPTION THAT TESTATOR INTENDS TO DISPOSE OF HIS WHOLE ESTATE.—It is presumed that a testator, when he makes and publishes his will, intends to dispose of his whole estate, unless the presumption is rebutted by its provisions or evidence to the contrary.

3. SAME.—While the law favors the heir to the extent that the heir will take what is not, by the words of the will, devised or bequeathed to another, no presumption of an intent to die intestate as to any part of an estate is to be made, where the words of the testator will carry the whole.

4. ALL BEQUESTS TO ONE PERSON—WORDS CONVEYING WHOLE ESTATE.—Where the bequests in a will were all to one person (not related to the testator) and the last bequeathing words were "also all the loose property in, on and around the homestead, consisting of one cow, two hogs and a lot of wood and all other property of every kind," and besides the property specifically devised by the will, the testator owned another lot and chattel property, furniture, notes, accounts, etc., held, that the words "and all other property of every kind" carried the whole estate.

APPEAL from the Circuit Court of Carroll county; the Hon.

John V. Eustace, Judge, presiding. Opinion filed November 8, 1886.

This is an appeal from an order of the Circuit Court of Carroll county, dismissing the petition of appellants, which was filed in the County Court of Carroll county, and which alleged that appellants were the sisters and only heirs at law of Charles Medler, deceased, and claimed that they are entitled, as such heirs at law, to all the property left by the said Charles Medler, remaining after the payment of the specific legacies mentioned in the will, and that all such specific legacies had been paid.

The last will and testament of Charles Medler, deceased, is in words and figures following, to wit:

In the name of God, amen:

I, Charles Medler, of the age of sixty-nine years, of the city of Mount Carroll, in the county of Carroll and State of Illinois, being of sound mind and memory, do make, publish and declare this my last will and testament in the manner following, that is to say: I will and direct that all my just debts and funeral expenses be paid in full. Second. I give and bequeath unto my friend, Margaret Dunz, the homestead and all the lots and parcels of land adjoining, being lots 2, 3 and 4; also a strip of land twenty-three feet in width off the north side of lot 7, all in block 15, in the N. Halderman plat of the town, now city, of Mount Carroll; also one lot in the east part of the city of Mount Carroll now owned by me and described by deed; also all interest I now have in a certain promissory note for two hundred dollars, given by Charles Stober, dated November 19, 1873, and secured by a certain trust deed of the same date, on lot 11, in block 5, in West Carroll, as laid out by David Emmert, and signed by Charles Stober and wife; also three thousand dollars in money, to be paid to her by my executor; also all the loose property in, on and around the homestead, consisting of one cow, two hogs and a lot of wood, and all other property of every kind.

Lastly, I hereby revoke and annul all former and other wills by me made.

Taubenhan v. Dunz.

In witness whereof, I have hereunto set my hand and seal this thirty-first day of December, 1882.

CARL MEDLER. [SEAL.]

Attestation of witnesses.

The inventory of the estate shows that besides the real estate specifically devised by the will, the deceased owned another lot valued at about $70, and chattel property consisting of furniture, liquors, etc., value not given, cash on hand at the time of the decease, $849 and notes and accounts, face value $8,489.

Mr. JAMES SHAW, Mr. WM. VOCKE and Mr. HARVEY STORCK, for appellants; that the heir is not to be disinherited unless by express words or necessary implication, cited 1 Redfield on Wills, *426; Saylor v. Plaine, 31 Md. 158; Wood v. Mitcham, 92 N. Y. 375; Crane v. Doty, 1 Ohio, 279; Areson v. Areson, 3 Denio, 458; Moone v. Heaseman, Willes, 141; Hay v. Earl of Coventry, 3 T. R. 83; Moore v. Denn, 2 B. & P. 247; Wheaton v. Andress, 23 Wend. 452; Haxtun v. Corse, 2 Barb. Ch. 506; Grim's Appeal, 89 Penn. St. 333.

Where bequests are made by words of enumeration, which are followed in the same clause by collective words, or words of general description, the latter may be confined to matters *ejusdem generis:* Rawlings v. Jennings, 13 Ves. 39; Dole v. Johnson, 3 Allen, 364; Johnson v. Goss, 128 Mass. 433; Fraser v. Alexander, 2 Dev. Eq. 348; Farish v. Cook, 78 Mo. 212; Wrench v. Jutting, 3 Beav. 521; Timewell v. Perkins, 2 Atk. 102; Pippin v. Ellison, 12 Ired. 1 L. 61; Hotham v. Sutton, 15 Ves., Jr., 319; Cook v. Oakley, 1 Peere W., 302; Collier v. Squire, 3 Russ. 467; Crichton v. Symes, 3 Atk. 61; Bullard v. Goffe, 20 Pick. 252; Doe v. Rowt, 7 Taunt. 79.

Mr. JAMES M. HUNTER and Mr. GEORGE L. HOFFMAN, for appellee; as to the construction of wills, cited Updike v. Tompkins, 100 Ill. 406; Blanchard v. Maynard, 103 Ill. 60; Welsch v. Belleville Savings Bk., 94 Ill. 200; 1 Redfield on Wills, 429; Ill. Land & Loan Co. v. Bonner, 75 Ill. 327; Hardle v. Outlaw, 2 Jones Eq. (N. C.) 75; Jackson v. Hansel,

17 Johns. 281; Heslop v, Gatton, 71 Ill. 528; Bergan v. Cahill, 55 Ill. 160 ; Johnson v. Johnson, 98 Ill. 564; Rountree v. Talbot, 89 Ill. 246.

It is presumed that a testator, when he makes and publishes a will, intends to dispose of the whole of his estate, unless the presumption is rebutted by its provisions or evidence to the contrary :   Higgins v. Dwen, 100 Ill. 554; Irwin v. Zane, 15 W. Va. 646 ; Jarman on Wills, 4th Ed., 143 (n) C.

Moran, J.   The question for determination is, what is the correct construction of the words in the last clause of the will, "and all other property of every kind."

Appellant's contention is, that those words are to be construed as bequeathing only property *ejusdem generis* with loose property in, on and around the homestead, and that as to such portion of his estate as was not specifically disposed of in his will, Charles Medler died intestate.

It is contended for appellants that where bequests are made by words of enumeration, which are followed in the same clause by collective words, or words of general description, the latter are to be confined to matters *ejusdem generis*.   The earlier cases in England, which are cited by counsel, give a degree of support to their contention, but an examination of those cases shows that a rule can not be drawn from them, as each case depends upon the peculiar phraseology of the will.

In Rawlings v. Jennings, 13 Vesey, 39, where the bequest was to the wife, of certain bank stock, together with all testa- · tor's "household furniture and effects, of what nature or kind soever," that he might be possessed of at the time of his decease, the master of rolls held that the bequest was to be confined to articles of the nature of those specified, and did not comprise the general residue.   But immediately following the general clause of the will, the testator gave bequests of money to different persons, and among others a pecuniary legacy to his said wife, and the court laid stress on that fact, observing that part of the property being given to her afterward, the word effects must receive a more limited construction.

Mr. Jarman, in his work on Wills, remarks on this case, that

the words of the will were very general, " but the manner in
which the testator, after making the bequest in question, had
g..ne on to give specific and pecuniary legacies, seemed hardly
reconcilable with the supposition that the prior gift to the
wife was intended to embrace the general residue, as it is more
natural, though certainly not invariable, for the testator to re-
serve his residuary disposition until the end of his will."

In Dole v. Johnson, 3 Allen, 364, by the third clause of the
will, the testator gave to his wife " all my real and personal es-
tate   *   *   *   so long as she shall remain my widow."   By
the fourth clause he gave "all my household furniture, wear-
ing apparel and all the rest and residue of my personal prop-
erty."   The personal estate having been in one clause for life
and the personal property in the other absolutely, the court
considering that the things named in the fourth clause are
chattels of strictly personal use, regard the meaning of the
whole will as made more consistent by restricting the word
property in that clause to chattels *ejusdem generis* with those
enumerated therein, and regarding productive personal prop-
erty as covered by the words "all my personal estate," in
which not an absolute but a life interest was given by the third
clause of the will.

But in the later case of Brown v. Cogswell, reported in 5
Allen, 556, the same judge held that under a clause of a will
giving " all my household furniture, wearing apparel and all
the rest and residue of my personal property, saving and ex-
cepting one feather bed," the legatee therein named took the
whole of the residue of testator's personal property, although
no intention is expressed in the will to dispose of the testator's
whole estate, and the will, in subsequent clauses, gives various
specific legacies in money, and although various collateral heirs
at law of the testator, one of whom is nearer in degree than
the legatees therein named, are not mentioned in the will.   It
was argued that the case was governed by Dole v. Johnson,
and the court observed that while no reason was seen to ques-
tion the correctness of that decision, yet it was to be observed
" that it was a case of great difficulty, by no means free from
doubt, and which carried the doctrine upon which it rests as
far as it can safely extend."

Johnson v. Goss, 128 Mass. 433, was a case like Dole v. Johnson, in that the court makes the same distinction between articles of personal use and convenience and personal property of a productive nature, such as mortgages and bank stock. The bequest was "all my personal property, my household effects, horse and carriage, my life insurance and two mortgages on real estate," which are described. The court said, "It is clear beyond doubt that the testator did not intend to use the words 'all my personal property,' in their ordinary sense, because he proceeds to give his wife and other legatees large portions of his invested and productive personal property. And it was accordingly held that mortgages not described by the testator in the clause did not pass under the terms.

In Fraser v. Alexander, 2 Dev. Eq. 348, the testator directed, that "all my property, consisting of lands, stock of every kind, household and kitchen furniture, wagon and farming tools, be sold at public sale, and the money thence arising" to be given to three certain churches. It was claimed that negro slaves passed by the general words "all my property." The court held that the words following, viz: "stock," etc., qualified the use of the preceding larger term, but the decision is made to rest mainly on the fact that the negroes are referred to in another clause. The court say: "But whatever doubt might arise on that clause standing by itself, it is removed by the subsequent one, which relates to the negroes specially. From that it is clear they were not intended to pass by the first, because they are directed to be disposed of by private sale, a manner different from the articles enumerated in the first. This difference being in the contemplation of the testatrix, she must be considered as purposely withholding them from the former provision for the sale of the latter, although she afterward makes no actual disposition of the proceeds that does not bring the proceeds again within the operation of the clauses from which they had been designedly excluded."

Farish v. Cook, 78 Mo. 212, is simply an adjudication that the words in a will "all my worldly goods," do not embrace

real estate where the context of the will shows that they were not understood to do so by the testator ; the court say, "But the subsequent language indicates by its enumeration, that he did not intend it should include real estate, for he continues, 'consisting of household furniture, clothing, beds and bedding, money and cattle.' He wills her his worldly goods, and tells what they are, thus restricting the meaning to personal property. He next wills the debts due him, which, as rights of action, do not ordinarily fall under the designation of 'goods.' He next proceeds to dispose of his real estate, making special mention of it, which naturally excludes that kind of property from the operation of the language which he had restricted to certain kinds of personal property."

In Wrench v. Jutting, 3 Beav. 521, the testator gave "all his household furniture, plate, linen, china, books, pictures and all other goods of whatever kind," and then proceeded to declare that certain specified portions of his property should be divided as follows: "£50 to B, £100 to C, etc.; £3,000 to £4,000 or whatever remaining sum or sums, to A." Lord Langdale said that if the first clause had been the only one in the will there would have been strong reason for extending the operation of the words "all other goods," but that the testator showed by subsequently stating his intention as to a particular part of it that he used the words in a restricted sense.

Ternewill v. Perkins, 2 Atk. 102, held that the words "whatever I have or shall have at my death," were restrained by the enumeration in the words, "as plate, jewels, linen, household goods," etc.

Pippen v. Ellison, 12 Iredell L. 61, cited by counsel to show that the word "property," as used in the will under consideration, would not include choses in action, is modified by the court in Hurdle v. Outlaw, 2 Jones' Eq. 75, where it is said that the restricted meaning which the court in the former case applied to the word, "property" was not necessary to the decision, and the judge who wrote the opinion in the former case, states that in it he was guilty in that regard of uttering an *obiter dictum*.

Taubenhan v. Dunz.

Hotham v. Sutton, 15 Vesey, 319, is cited by counsel for the statement of Lord Eldon that it appears to be settled that the words, "other effects" in general, mean effects *ejusdem generis*, but the case shows that it appearing from the context that the testator understood the words in the large sense, they were so construed, and everything but money, which was specially excepted, was held to pass under a bequest of "plate, linen, household goods and other effects (money excepted)."

In Crichton v. Lymes, 3 Atk. 61, the words "all my goods, wearing apparel of what nature soever, except my gold watch" were held not to include the entire personal estate, Lord Harwicke, saying: "This was not intended to be a residuary clause, for she afterward gives a legacy of £50."

Collin v. Squire, 3 Russ. 467, held that the stock which had been included in a prior marriage settlement, could not reasonably be considered to pass under the words, "every other article belonging to me both in and out of my house and which may not be mentioned herein."

From the foregoing statement of the grounds of decisions in the cases cited and relied on by appellants, it is apparent that, while they give general support to the doctrine that general words will receive a limited construction when preceded or followed in the bequeathing clause by words of enumeration, yet in nearly every case the construction was based, not merely on the fact of the enumeration and the general words found in the same clause, but mainly and in some of the cases wholly, upon the ground that from subsequent bequests made by the testator in the will, it was demonstrated that he used the general words in the restricted sense, and did not suppose or intend them to carry the residue of his property.

A few cases furnish instances where the doctrine contended for seems to have been carried very far, but they are among the early decisions, and are not followed in the more modern cases. Mr. Redfield in his work on Wills, Vol. 1, 442, note, says that "The courts of equity, even in England, do not seem to apply the rule *ejusdem generis* with so much strictness as formerly." In support of this observation many cases

might be cited. In Nugee v. Chapman, 29 Beav. 290, Lord Romilly said: "In these cases, where general words are construed to be *ejusdem generis* with the particular words which preceded them, there is often a great refinement of law, and the construction given is not always that which was intended by the testator himself. It is not uncommon for persons who intend to include everything and who do not write accurately, to specify many items and then to add a general expression." And the court determined that under a bequest as follows: "As regards my worldly goods I give and bequeath all my furniture, plate, books and other personalty, to my wife," the wife took everything.

In Grover v. Davis, 29 Beav. 222, the bequest was to the wife, of clothing, balance of clothing, money due and to become due. "Also the whole of my property and effects, that is to say my box, clothes, bedding, etc., etc., I bequeath to my wife," was held to convey the whole residue, including a reversionary interest in real estate.

In Swinfen v. Swinfen, 29 Beav. 207, the words "I give to Mrs. Swinfen, my son's widow, all my estate at Swinfen or thereto adjoining, also all furniture or other movable goods here," were held to carry the money in the house. The words "movable goods here" were to be taken in their ordinary unconfined sense, and were not to be cut down by their being preceded by the word "furniture."

In Bennett v. Bachelor, 3 Brown's Ch. 26, the will, after devising to one Jenny Powell, real estate, and giving her specific bequests, gave to her also "all my household goods, books, linen, wearing apparel, and all other not before bequeathed goods and chattels that I shall be in possession of at the day of my decease (except the plate and legacies before and hereafter given and bequeathed); also I give and bequeath unto said Jenny Powell all money that shall be due from tenants and other persons."

It was contended that this would not pass leasehold estates, or money in the funds, but it was held a good residuary clause.

In Dean v. Gibson, 3 L. R. Eq. Cases, 713, the will was "that my personal property, consisting of money and clothes,

shall be equally divided among my three sisters." All the personal property was held to have passed, the court saying : " She attempted to enumerate the items of which her personal estate consisted and failed to mention them all." There was no other bequest.

In Hodgson v. Jex, L. R. 2 Ch. D. 122, the bequest was " I give and bequeath to my sister, Anne Gray, for the term of her natural life, all my furniture, plate, linen, and other effects that may be in my possession at the time of my death." In addition to the property mentioned in the will, testator left two promissory notes and money in the bank. The court say : It is alleged that the words " other effects," are to be cut down so as to mean that which is something like furniture, plate or linen. But the answer is, that the words of a will ought to have their natural meaning given them, unless there is some contrary intention appearing in the will. The mere fact that the testatrix enumerates some items before the words " and other effects," does not alter the proper meaning of those words. The residuary personal estate was held to pass.

In Arnold v. Arnold, 2 Mylne & K. 366, the bequest of " my wines and property in England," was held to apply to testator's property in England of every description and was not confined to property *ejusdem generis* with the wines. Sir John Leach, M. R., said : " That the mere enumeration of particular articles followed by a general bequest, does not of necessity restrict the general bequest is obvious, because, as has been stated, a testator often throws in such specific words and then winds up the catalogue with some comprehensive expression, for the very purpose of preventing the bequest from being so restricted. Clearly, therefore, in the ordinary case, the gift of the wines would not be limited by the occurrence of the subsequent word ' property ' which, be it observed, is as large and comprehensive a term as can possibly be used. * * * Indeed I have been unable to discover any instance in which the word property has been confined to articles of the description above enumerated, unless where other expressions occurred, from which it was clear that the word was not there used in its ordinary sense. The cases on this subject naturally

turn upon very nice distinctions; in most of them the general bequest sought to be restricted has been of 'effects,' and I know of none in which the question has arisen on the word 'property,' unless when it has been introduced by way of exception or qualification to the prior gift."

The rule is now well established by the later English cases, that words of comprehensive import in a bequest should receive their full extent of operation unless some very distinct ground can be derived from the context for regarding them as employed in a special and restricted sense. In addition to the cases above quoted from in support of this view, the following English and American cases may be cited: Martin v. Glover, 1 Coll. 269; In re Kendall, Trustee, 14 Beav. 608; Fleming v. Burrows, 1 Russ. 244; Jarnagin v. Conway, 2 Humph. (Tenn.) 50; Hurdle v. Outlaw, 2 Jones' Eq. ·75; Bunting v. Harris, Phill. Eq. 11.

The words used in different wills are so various that but little aid can be obtained in construing any particular one from decided cases. The will under consideration is obviously inartificially drawn. The bequests are all to one person, and the final clause is as broad and comprehensive as could possibly be used. "All other property of every kind" would carry all the property specifically bequeathed as well as everything else of which the testator was possessed at the time of his death. Unless these words are limited by the enumeration of loose property on and around the homestead, which precedes them, they must be given their full ordinary meaning and force. There is nothing in the will except that specific devises and bequests are made to the same person to whom the general bequest is made, and the enumeration of the loose property around the homestead that can furnish any argument for limiting the general words. These general words are the last bequeathing words in the will, and thus occupy the position that is naturally and usually given to a residuary clause. The whole context of the will must be regarded and each word and sentence must be given its ordinary meaning and operation, and must not be restricted unless such restriction is necessary to carry out the plain intention of the testator.

Taubenhan v. Dunz.

"The language used shall receive its ordinary interpretation, except where some other is necessary or clearly indicated." Christie v. Phyfe, 19 N. Y. 344.

The reasons drawn by counsel for appellants from the form in which the will is drawn, and from the fact that the beneficiary under the will had no claims on the testator, and his next of kin are not mentioned or provided for, are not without some force, but as reasons for a restricted construction of the broad words of this will, they are too slight and equivocal, and rest too much upon a foundation of surmise and conjecture to furnish that evidence of intention which, by the rule established by the cases we have quoted, is required to control such words. There is another rule, the application of which to the construction of this will, leads to the same result. "It is presumed that a testator, when he makes and publishes his will, intends to dispose of his whole estate, unless the presumption is rebutted by its provisions or evidence to the contrary." Higgins v. Dwen, 100 Ill. 554.

It is true, as counsel argues, that the law favors the heir to the extent that the heir will take what is not, by the words of the will, devised or bequeathed to another, but in the words of Gibson J., in Stehman v. Stehman, 1 Watts, 475, "No presumption of an intent to die intestate as to any part of an estate is to be made where the words of the testator will carry the whole."

The words of this will are, as we have seen, broad enough to carry the whole, and the law presumes that was the testator's intention. The judgment of the circuit court was correct and must be affirmed.

Judgment affirmed.